IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KYLEN MAJOR, | |
| **Plaintiff,** | |
| v. | Case No. 25-cv-55-NJR |
| EDWARD STALLMAN, AMANDA CHOATE, JOHN DOE SERGEANT, and ANTHONY WILLS (official capacity only), | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Kylen Major, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is currently before the Court on Major's Motion for Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order (Doc. 20). Defendant Anthony Wills filed a response (Doc. 35) in opposition to the motion.

## BACKGROUND

On January 14, 2025, Major filed his original Complaint alleging the denial of medical care (Doc. 1). The complaint was dismissed for failure to state a claim, but Major was granted leave to file an amended pleading (Doc. 14). On April 15, 2025, Major filed his Amended Complaint alleging both deliberate indifference in the treatment of his medical needs and an excessive force claim against officers at Menard (Doc. 15).

1

Major's Amended Complaint alleged that on August 11, 2024, he returned from a medical writ where he had blood drained from his penis (Doc. 16, p. 2). Upon return to the prison, Major was sent back to his housing unit but started to fill ill. Major alleged that he started to feel sick, lightheaded, and nauseous (*Id.*). He contacted Officer Edward Stallman about his symptoms, but Stallman denied him care. Major then asked an inmate worker to inform John Doe Sergeant about his need for medical care, but Major still did not receive care. Later that same day, Stallman and Nurse Amanda Choate entered the housing unit. Major tried to explain his condition to Choate, but she said he was not a doctor and did not know what he was talking about (*Id.*). When Major started to explain, Stallman sprayed him in the face with pepper spray (*Id.*). Stallman sprayed Major twice and then sprayed the entire cell.

After the use of mace, other officers, including John Doe Sergeant, approached Major's cell (Doc. 16, p. 3). John Doe Sergeant cuffed Major and then banged his head on the bars of the cell as he extracted him from the cell (*Id.*). He was escorted downstairs where John Doe Sergeant and Edward Stallman searched him and then beat him. Major alleges the two officers elbowed and punched him in the ribs and back, and then sprayed him again with mace (*Id.*).

After a review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, Major was allowed to proceed on the following counts:

> **Count 1:** **Eighth Amendment excessive force claim against Edward Stallman and John Doe Sergeant for their use of force against Major on August 11, 2024.**

> **Count 2:** Eighth Amendment deliberate indifference to medical needs claim against Edward Stallman, John Doe Sergeant, and Amanda Choate for denying Major care on August 11, 2024.

(Doc. 16, p. 5). Warden Anthony Wills remained in the case, in his official capacity only, for the purpose of responding to discovery aimed at identifying the John Doe Sergeant.

### A. Major's Motion for Injunctive Relief

While the defendants were being served, but before filing Answers, Major filed a document labeled as an order to show cause for a preliminary injunction and temporary restraining order (Doc. 20). The document, structured as a proposed order to defendants, sought an order to show cause why defendants should not be enjoined from advancing within 150 feet of Major, working in the same cellhouse as him, or continuing their retaliatory efforts against him (Doc. 20, p. 1). Specifically, Major requested an order that the defendants refrain from tampering with his meals, cell plumbing, medications, excessive cell searches, unnecessary transfers to cells with steel doors, verbal/physical abuse, as well as refrain from denying him medical and mental health treatment (*Id.* at p. 2).

Major attached two documents labeled as affidavits to his motion. In the first statement, Major stated that on June 12, 2025, Edward Stallman approached his cell and indicated that Major had not learned his lesson because he continued "telling on me." (Doc. 20, p. 4). Later that same day, Stallman and Amanda Choate walked through the housing unit and stopped at a neighboring cell (*Id.*). Stallman noted that Major was there and again noted that he failed to learn his lesson (*Id.*). Stallman and Choate laughed at

him and Choate joked that Stallman should mace Major again (*Id.*). Major stated that Stallman worked in his housing unit again on June 13, 14, and 15, and every time Stallman worked in the unit, he continued to harass, antagonize, and threaten Major (*Id.*). Stallman told Major to drop his lawsuit, threatening that Major would not want to find out what Stallman would do if the lawsuit was not dropped.

On June 16, 2025, Major suffered from another medical event. Major states that he suffers from priapism, a condition where he has an erection that fails to go down, even after a substantial amount of time. Major notes that when he has an episode, he is sometimes required to go to an outside hospital to have the blood drained from his penis (*Id.*). Until the episode resolves, Major suffers from throbbing, aching, and stabbing pain, and is unable to urinate (*Id.*). Major alleges that Stallman is aware of his condition.[1] Major informed Stallman of his prolonged erection and requested medical care. Stallman responded "awe you need my help now we'll see" and then walked off (*Id.* at p. 4-5). Major contends that hours later, Stallman informed him that he had a sick call scheduled with a male nurse (*Id.* at p. 5).

Major went to the appointment with the nurse and explained that he had nerve damage in his left hand that was bothering him (Doc. 20, p. 5). He also explained that he still had an erection that would not go down. Instead of calling the doctor, the nurse returned Major to his cell and directed Stallman to bring Major a bag of ice for the

---

[1] The claims in Major's lawsuit arise from symptoms he experienced and care he sought from Stallman and Choate after his return from the hospital for treatment of a priapism episode.

4

swelling (*Id*.). Major stated that Stallman failed to bring him a bag of ice, and no one called the doctor about his condition (*Id*.). Major contends this could have caused him serious injury because multiple doctors have told him that an erection lasting over four hours can cause erectile disfunction and Major should be sent to the hospital for treatment (*Id*.). After the event, Major wrote a grievance and sent a letter to Warden Anthony Wills.

In his second "affidavit" Major stated that on June 21, 2025, Stallman was again working in the same housing unit as Major. He was again suffering from a priapism episode since early in the morning and notified Stallman of his condition (Doc. 20, p. 6). He informed Stallman that he had an erection since 4:00 a.m., was in extreme pain, and needed to see medical staff (*Id*.). Although he informed Stallman of his condition at 7:00 a.m., Major did not see the nurse until 11:30 a.m. – 12:00 p.m. (*Id*.). After seeing the nurse, he was sent to a local hospital for treatment (*Id*.). Major stated that he wrote his affidavit on June 23, 2025, and he was having enough episode of priapism (*Id*.). Although he informed Stallman at 7:00 a.m. and submitted request slips, as of 11:30 a.m. he had not received any medical care (*Id*.). Major noted that he believed he was being retaliated against for his pending lawsuit (*Id*.).

### B. Warden Anthony Wills's Response

Although Major's filing was not a formal motion, given the concerning allegations set forth in the motion, the Court directed Warden Anthony Wills to respond. Although Wills was only in the case in his official capacity to identify the John Doe Sergeant, the Court added Wills in his official capacity to the extent Major now sought preliminary injunctive relief (Doc. 21).

Wills argues that Major fails to demonstrate that he has a reasonable likelihood of success on the merits of his claims. Wills notes that Major's request in his motion is unrelated to the claims in his lawsuit. Specifically, Major was allowed to proceed on an excessive force claim and a deliberate indifference to medical needs claim related to an incident in August 2024. His motion, however, seeks a transfer to another facility and an end to alleged retaliation that he argues he is facing from Stallman and Choate. Wills argues that the request for relief is outside of the scope of this lawsuit because there are no claims in this case regarding retaliation.

## LEGAL STANDARDS

A temporary restraining order may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). The same legal analysis is used to determine whether a TRO or a preliminary injunction is warranted.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the

burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## DISCUSSION

Simply put, Major fails to demonstrate that he is entitled to injunctive relief at this time. Again, Major did not file a formal motion seeking injunctive relief. Instead, he filed a proposed order to show cause and attached two affidavits detailing two recent encounters with Defendant Stallman. His proposed order is vague as to the specific forms

7

of retaliation that he is allegedly experiencing. He merely directs defendants to stop denying him meals, tampering with his cell, denying him medication, denying proper medical/mental health treatment, subjecting him to excessive cell searches, transferring him to cells with steel doors, and verbally and physically abusing him (Doc. 20, p. 2). His filings, however, fail to include any factual allegations regarding these alleged actions. He fails to allege when any of these acts of retaliation have occurred, nor has he identified the individuals involved in these actions. Further, his motion fails to demonstrate that he has a likelihood of success on the merits, that he has no adequate remedy at law, or that he will suffer irreparable harm absent his requested relief.

      Major does attach affidavits that document several encounters that he had with Defendants Stallman and Choate in June. His affidavits identify specific incidents involving verbal threats and issues with his medical care in June 2025. He argues that these incidents demonstrate that he is being retaliated against by Defendants Stallman and Choate, and he seeks a transfer due to fear for his life (Doc. 20, pp. 5-6). But claims of retaliation are beyond the scope of this lawsuit. Major's remaining claims focus on a specific incident of excessive force in August 2024 and his request for medical care on that date (Doc. 16, p. 5). The Amended Complaint does not include claims regarding acts of retaliation or his current medical care for his priapism. To the extent that he seeks relief for these new claims, Major would have to file a new lawsuit.

      Even if these new allegations were related to the claims in his lawsuit, Major fails to demonstrate a likelihood of success on the merits. Although he alleges that he believes officials at the prison are going to kill him, he fails to offer any evidence to establish this

fear. "[W]ith respect to the prospective injunctive relief ... the future harm must be both real and immediate, not conjectural or hypothetical." *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1064 (7th Cir. 2020) (*citing Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). All Major offers in his filings are vague statements from Stallman that Major has not learned his lesson and that Major would not want to find out what Stallman would do to him. Such verbal harassment, alone, does not state a claim. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."); *Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016) (citing *Antoine v. Uchtman*, 275 F. App'x 539, 541 (7th Cir. 2008)). Major also acknowledges being seen by medical staff after complaining that he needed medical care, including one instance where he was sent to an outside hospital for care (Doc. 20, p. 6). Nothing in his filing suggests that he faces future harm, nor has he demonstrated that he is being denied medical care or facing threats to his life.

## CONCLUSION

For the reasons set forth above, Major's Motion for Order to Show Cause, Temporary Restraining Order, and Preliminary Injunction (Doc. 20) is **DENIED**.

**IT IS SO ORDERED.**

DATED: September 2, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**